18-20-34 Jose Gutierrez-Gutierrez versus William P. Barr and 19-37-15 Jose Gutierrez-Gutierrez versus William P. Barr. All right, Ms. Sharma Crawford, we'll hear from you first. Thank you, your honor. May it please the court. There are two separate matters before the court. The first is the reinstatement process that was utilized in Mr. Gutierrez's case. The second is the motion to reopen, which was filed with the immigration court in this particular instance. Now, your honors, I'm going to address each one of those matters individually starting with the reinstatement process. Now, the reinstatement process is just that. It is a process. There is no new order that is created. Rather, the statute allows for the agency to reinstate a prior existing order. The courts have held that reinstatement proceedings comport with due process where there is due process in the underlying removal proceedings. Now, in this instance, while the reinstatement statute, which is found at 8 U.S.C. 1231, indicates that the underlying order is not subject to review or reopening, I would submit to you, your honors, that when you look at the plain language of 8 U.S.C. 1251 A2D, which is the final orders of removal, it's the final orders of removal, there is no disharmony between those two statutes. In fact, the statute itself, plain on its face, allows for constitutional questions and questions of law to remain within the jurisdiction of the court. That is not an unusual position. In fact, this court in Molina Juarez, the issue that was before the court was whether the reinstatement provisions, the reinstatement statute, could be retroactively applied to Mr. Molina Juarez. The court specifically found that 1252 A2D does not strip the court of jurisdiction to address that question of law. In much the same way, the question before the court here is a constitutional one. As I indicated, that the firmity of the reinstatement proceedings can only be measured against the firmness of the due process that was found in the underlying proceedings. When the record here is looked at as a whole, what the evidence provides is that there was, in fact, a very large violation of Mr. Gutierrez's Fifth Amendment right to due process. While litigants in removal proceedings don't have a whole host of rights, what they do maintain and the courts have repeatedly and consistently found is that they retain a Fifth Amendment right to a fundamentally fair hearing. I would submit to your honors that when you look at the record as a whole and in particular the transcript of that hearing, what becomes evident is that there was a due process violation that occurred in that hearing. So much so that the order or the document that was reinstated through the reinstatement process is not even a court order. It is a purported order, but it is not one that was signed off by a judge. Instead, it was a document that was signed by a party to the litigation. Ms. Sharma Crawford, are we precluded under our case law from ruling in your favor here? I don't believe you are, your honor, because what I'm asking the court to do is, this case in some ways provides a case of first impression because the issue of can the constitutionality issue, can a due process challenge under the U.S. Constitution, is that still within the parameters of the court's jurisdiction? I don't believe there is any case that has found that it isn't. In fact, I would submit to you that the plain language of 1252 A2D allows for where other statutes strip jurisdiction. So you don't think that Laura Nieto affects our ability to rule as you ask? I don't, your honor. The question in Laura Nieto was not a constitutional one. The question in Laura Nieto was not a challenge to the fundamental Fifth Amendment rights that he had. Indeed, the question before in Laura Nieto was a motion to reopen sua sponte, if I, and that the court has already found is because it was a discretionary form of relief. The court didn't really, didn't deem that to be a question of law. But in Laura Nieto, there were a number of factors that I think make it incredibly dissimilar. The first being that there was actually a valid order that was reinstated. We don't have that in this process that has occurred in these proceedings in Mr. Gutierrez's case. Secondly, the regulations that are designed to protect even the limited due process rights in the reinstatement process were not challenged in any way in Laura Nieto. So I would submit to you, your honor, that Laura Nieto is distinguishable wholly because of the issue that was raised in that case versus what is being asked to be reviewed here. The secondary part, and I do want to address this real quickly, is that there are regulations that under reinstatement should have been followed, which were also not followed because there was, when you look at the regulations at 8 CFR 241.8, it requires the agent to actually go and it says the immigration officers must obtain the court order. Doesn't say a copy of it, doesn't say what's in their court file. I mean, there's a regulatory requirement that they obtain the court order and that points the agency directly to the court file, which again was not done here. So not only are there regulatory violations that occur with the process of reinstatement in and of itself, but I would submit to you that there's a constitutional breach that occurs that makes it fundamentally flawed on a base level in the underlying removal proceedings as well. Your honor, I believe I would like to reserve the rest of my time unless someone has a question. Very well, you may. Thank you for your argument. Ms. Greer, we'll hear from you. May it please the court, I'm Christina Greer on behalf of the United Petitioner. Petitioner cannot challenge his 1998 removal order either through a petition for review from the reinstatement or through a motion to reopen with the agency. Thus, the court should dismiss this petition or those aspects of this petition for review. As for his challenge to DHS's reinstatement of the 1998 removal order, the court should deny his petition because DHS's withstand substantial evidence review. I will address each of these three orders chronologically. So beginning with the first, the 1998 removal order, to the extent petitioner challenges that order, he cannot do so in this petition for review. Under 8 U.S.C. 1231A5, review is plainly stated that it is not subject to being reopened or reviewed and there are no exceptions to this clear bar. And 8 U.S.C. 1252A2D, which does provide or allows challenges to certain constitutional questions and questions of law in other situations where review has been stripped from the courts, this court has actually found that specifically that that subsection does not restore judicial review in this situation. And footnote 4 of Lauren Nieto, the court stated that 1252A2D does not restore review unless a petition for review was filed within 30 days of the original removal order occurred in 1998. This petition for review was filed over 20 years later. And so under Lauren Nieto, petitioner's argument about 1252A2D providing jurisdiction over any constitutional claims is foreclosed. Additionally, there's no gross miscarriage of justice exception. Some courts have found there to be such an exception only in the challenge of a reinstated order, but they've done so under 8 U.S.C. 1252A2D and this court has found that that provision does not apply here. Additionally, the statute does not provide any such exception and so the and Lauren Nieto suggests that that would be the same outcome here because in Lauren Nieto petitioner also raised a gross miscarriage of justice claim and the court found that there was no jurisdiction to review the underlying removal order. So moving to the second issue here, which is DHS's reinstatement order. The only issues that the court can review when it comes to the actual reinstatement is the alien's identity, whether there was a removal order, and whether the alien unlawfully reentered the United States. And those three issues have been conclusively established here. Petitioner has not cited any authority allowing for that requires a look at the underlying removal order to determine validity or constitutional firmity. In fact, that's what specifically 1231A5 bars, but even if And so here the question is just is there a removal order? Is there an order that's actually signed by the immigration judge in the record? There is in the immigration court's record. So there is an actual order signed by the immigration judge at page 465 or 466. One of the two, I apologize. 465 is the actual order signed by the immigration judge. The order at page 466 is an exact copy of that same order, but in a different handwriting and obviously signed by a different person with the immigration judge's name. That was the one that was signed by the immigration lawyer, the government's lawyer, is that correct? And is that the one then that got sent to Mr. Gutierrez's lawyer? So what happened is at the hearing, this was a telephonic hearing. So the judge was in Chicago and Mr. Gutierrez and his counsel and the INS attorney were all in Missouri. And so at that hearing, for whatever reason, the INS attorney at the instruction of the immigration judge filled out the form as the immigration judge filled out the form and then handed the removal order to petitioner. His counsel later received a mailed copy of the immigration judge's actual signed order. Okay. So his lawyer got the one that was actually signed by the immigration judge? Yes. And there's, I believe it would be page 464. There's a cover sheet to that order showing that it was sent to the immigration attorney. And I would like to note that at page... In the reply, petitioner alleges that those two orders were submitted by petitioner and that's the only reason they are in the record. And that's incorrect. The submissions by petitioner actually end at page 440 of the record and the documents after page 440 are what was in EOIR, the immigration court's record. So all of those documents were maintained by the immigration court. And so it is true that it was this other order that was actually filled out by the INS attorney that was attached to the notice of intent to reinstate. However, to the extent there's any harm, it does, first of all, it does represent adequately what the actual removal order said. It is identical in all respects. But to the extent there is an error, it would be harmless. Because all that would need to happen to remedy that error is for the court to remand or if the court remanded, what would happen is DHS would attach the correct removal order. There's harmless error. There is a removal order here. And to the unlawful reentry point, this court's ‑‑ the third aspect of the reinstatement analysis is that the petitioner actually did unlawfully reenter. And that is controlled by this court's decision in Terrazas Hernandez where the court found that even a procedurally regular entry after removal is not a lawful entry because the petitioner did not seek consent to reapply for entry. And so finally, turning to the third order at issue here, that's the board's denial of petitioner's motion to reopen. The agency did properly deny this on jurisdiction grounds. Petitioner has not shown that the agency does, in fact, have jurisdiction. As stated, under 1231 ‑‑ or 1251A5, the statute states that once an order has been reinstated, it cannot be reopened. And that is what the immigration judge stated here. This is consistent with case law in the 9th, 5th, and 7th circuits which have all held that the board does not have jurisdiction to reopen even in the case of a gross miscarriage of justice. Petitioner cites two Board of Immigration Appeals decisions from the 1960s, matter of Farinas and matter of Malone. Both of those are predicated on an old statute that did not specifically bar reopening after a reinstatement. Additionally, those two cases arose in what were reinstatement proceedings. Because previously, there were actual proceedings before a special inquiry officer. But with the passage of IRIRA in 1996, Congress specifically took away the ability to reopen or review a reinstated order once it's been reinstated. I would like to point out one other thing. Petitioner argues in the reply about matter of Vizquierdo in the 9th circuit. In that case, the 9th circuit did state that certain motions to reopen were available to petitioners or to aliens after the reinstatement proceeding occurred. That was a special one for situations where the alien did not receive notice and was ordered in absentia removal orders says that the alien may seek review at any time or may seek reopening at any time. I would note that the 9th circuit has since stated that morale does not allow for reopening generally an underlying order and that was in an en banc decision earlier this year in Cuenca. We respectfully request that the court deny in part and dismiss in part this petition for review. Do you think jurisdiction is the right terminology for the board's ruling or the IJ's ruling? Is it really a lack of jurisdiction or is it just a motion over which the immigration court has jurisdiction that has no merit? The way that I read the immigration court states that it cannot review or it cannot reopen because the statute states that reopening is not available after an order has been reinstated. So, I believe that that would be a jurisdictional determination. Does that answer your question? Well, I know what the judge said. I guess my question was more whether it's correct that the judge did lack jurisdiction or whether this is a misuse of the term jurisdiction in a case where the immigration court has jurisdiction but just properly denied the motion because the statute says the order is not subject to being reopened. I'm not sure. I don't know what the answer is. I'm asking if you have thought about that. I haven't thought about it on those terms. Perhaps it could also be seen as the immigration judge doesn't have authority to reopen because the statute specifically precludes reopening, except that there has been that small exception found by the Ninth Circuit in Morales-Escuero where the Ninth Circuit said that this other provision at 1229AB5CII, that that provision, because it allows for reopening at any time in the situation of a person who has been removed in absentia without notice, that because that portion allows for reopening and rescission any time, that overrides the Ninth Circuit, even though that was a petition for review of the reinstatement and not of a motion to reopen, did say that reopening was available in that small pocket but not generally as in this case. All right. Thank you for your argument. Thank you. Ms. Sharma Crawford, you have some time. We'll hear from you in rebuttal. Thank you, Your Honor. What is particularly troubling with the agency's or the government's position is that even when faced with evidence of a clear constitutional violation, the position put forward indicates that there's no remedy. Now, if this court is to say that the plain language of 1252A2D does not mean what it means and the use of the term constitutional issues is not clear and instead a more generic statute of the reinstatement process, which doesn't necessarily say it cannot review the process by which the order was obtained. The issue becomes is that when you look at the reopening statute under 1229A, what you find is that there's a bit of a limitation in the words in the sense that the only time they use the term rescission is in the context of an in absentia order. But where an order, let's say there is a constitutional violation and you seek to rescind that order because it is born out of a process that is not constitutionally sound. If we accept the government's position, that would mean there is no legal remedy for that posture of a case. Clearly, Congress could not have intended that because if it did, it allows for the misuse and the misconduct that occurred in this type of a case in Mr. Gutierrez's case. We know there was ineffective assistance of counsel. We know that because by the record taken as a whole and the statements of both Mr. Gutierrez and Ms. Gladney, we know that she did not properly advise him of what it is that he was giving up. He had no idea. And as the court in North Carolina, when addressing a similar issue in the context of an illegal reentry case, said ministerial representation is no representation. And that's what happened here. So you have a situation where we have evidence that clearly points to an ineffective assistance of counsel. It is a fundamental violation of Mr. Gutierrez's Fifth Amendment due process rights. The statute that allows for the final orders of review gives this court authority to address that. And in fact, the Sixth Circuit has found that their constitutional questions survive a reinstatement process and the gross misconduct or the manifest gross manifest gross miscarriage of justice, excuse me, that I would submit to you a constitutional violation is has been shown to survive in both the Ninth Circuit, the Third Circuit and the Fifth Circuit. So the question that's before this court is different than what the current precedent is. I would ask the court to review it for the constitutional question that is being brought forth. All right. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.